1

2

3

4

5

6

7                         IN THE UNITED STATES DISTRICT COURT

8                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   CHARLES CHATMAN,                    )   No. C 03-2820 MMC (PR)
                                         )
11              Plaintiff,               )   **ORDER GRANTING DEFENDANT CHEN'S**
                                         )   **MOTION FOR SUMMARY JUDGMENT;**
12        v.                             )   **DENYING AS MOOT PLAINTIFF'S**
                                         )   **APPLICATION TO PROCEED IN FORMA**
13   RICHARD EARLY, et al.,              )   **PAUPERIS**
                                         )
14              Defendants.              )
     _____         )   **(Docket Nos. 103 & 110)**
15

16          In 2003, plaintiff Charles Chatman, a California state prisoner currently incarcerated

17   at High Desert State Prison, Susanville, and proceeding pro se, filed the above-titled civil

18   rights complaint pursuant to 42 U.S.C. § 1983.  In 2004, the action was dismissed by the

19   Court and, in 2005, the Court of Appeals vacated the order of dismissal and remanded the

20   matter.  Thereafter, by order dated October 16, 2006, the Court found plaintiff had stated

21   cognizable claims for relief based on his allegations of food deprivation, retaliation and

22   interference with his mail.  The Court ordered the complaint served on numerous prison

23   officials at Salinas Valley State Prison ("SVSP"), supervisory officials employed by the

24   California Department of Corrections and Rehabilitation ("CDCR"), and John Chen

25   ("Chen"), Chief Deputy Inspector General for the California Office of the Inspector General

26   ("OIG").   Subsequently, by order dated February 11, 2008, the Court directed plaintiff to

27   serve defendants with his Amended Complaint, and scheduled the filing of dispositive

28   motions.

1    Now before the Court is defendant Chen's motion for summary judgment.[1] [2]  Plaintiff

2    has filed opposition to the motion, and Chen has filed a reply.  Also before the Court is

3    plaintiff's application for leave to proceed in forma pauperis.

4    **BACKGROUND**[3]

5    Plaintiff claims his First, Eighth and Fourteenth Amendment rights were violated

6    when Chen failed to exercise his authority as the Chief Deputy Inspector General for the OIG

7    to intervene on plaintiff's behalf and require prison officials at SVSP to provide plaintiff with

8    adequate food and stop interfering with plaintiff's legal mail.

9    A.    The Office of the Inspector General

10   The OIG was created by the California Legislature in 1994 as part of the Youth and

11   Adult Correctional Agency.  (Decl. Matthew Cate (Inspector General of California) Supp.

12   Mot. Summ. J. ("Cate Decl.") ¶ 2; Cal. Penal Code § 6125, Amended Stats 1994 ch 766 § 1

13   (SB 1462).)  In 1998, the legislature made the OIG a separate, independent state agency.

14   (Cate Decl. ¶ 2; Cal. Penal Code § 6125, Amended Stats 1998 ch 969 § 2 (SB 1913).)

15   During the period relevant to the instant action, specifically, 2001 and 2002, Steve

16   White was the Inspector General, and Chen, the defendant herein, was the Chief Deputy

17   Inspector General.  (Cate Decl. ¶ 3.)

18   The mandate of the Inspector General is set forth at California Penal Code §

19   6126(a)(1):

20

21   _____

     [1]All of the other defendants to this action are jointly represented by the Attorney
22   General's Office ("AG defendants"), and have filed a separate motion to dismiss and for
     summary judgment.  That motion is addressed by separate order.

23
     [2]The Court previously granted in part and denied in part Chen's motion to dismiss the
24   original complaint for failure to state a claim upon which relief may be granted.  (Order, filed
     July 27, 2007, at 9:7-8.)  Thereafter, Chen filed a motion for summary judgment.  Said
25   motion, however, was rendered moot when plaintiff filed the Amended Complaint.  (Order,
     filed Feb. 11, 2008, at 6:19-23.)  In response to the Amended Complaint, Chen has now
26   renewed his motion for summary judgment and, in so doing, asks the Court to take judicial
     notice of those declarations and exhibits submitted in support of the previously-filed motion.
27   Good cause appearing, the request is hereby GRANTED.

     [3]The facts in the following section are undisputed.
28

2

The Inspector General shall review departmental policy and procedures, conduct audits of investigatory practices and other audits, and conduct investigations of the Department of Corrections and Rehabilitation, as requested by either the Secretary of the Department of Corrections and Rehabilitation or a Member of the Legislature, pursuant to the approval of the Inspector General under policies to be developed by the Inspector General. The Inspector General may, under policies developed by the Inspector General, initiate an investigation or an audit on his or her own accord.

(Cate Decl. ¶ 4.)

The investigation policies developed by the Inspector General, which policies were in effect during the relevant time period herein, provide that an investigation will be initiated when: (1) the Inspector General determines one should be opened; (2) an issue involves a threat to life or great bodily harm; (3) the Governor or a member of the legislature has requested an investigation; or (4) an issue involves retaliation by CDCR employees against other CDCR employees.  (Cate Decl. ¶ 6; Opp. Ex. 2 (OIG Administrative Manual § 6.1).)

B.    Food Deprivation [4]

On or about July 29, 2001, plaintiff was transferred from Corcoran State Prison to SVSP.  Approximately one and one-half weeks later, an inmate was murdered in the mess hall; consequently, the prison was put on lockdown and custody staff began serving meals to inmates in their cells.

On or about August 19, 2001, plaintiff wrote a letter addressed to defendant Chen at the OIG.  The letter complained that plaintiff and his cellmate were being "systematically harassed by many staff members" at SVSP, and that on one occasion, specifically, August 16, 2001, staff deprived plaintiff and his cellmate of their evening meal, and on three other

_____

[4] In the Amended Complaint, plaintiff makes allegations concerning alleged unsanitary food conditions at SVSP.  He brings no claim of a constitutional violation based on such conditions, however, and no such claim has been found cognizable in this action. Rather, plaintiff makes reference to unsanitary food conditions only in the context of his claims that prison officials deprived plaintiff of food and placed him on Management Control Status in retaliation for his having complained about unsanitary food conditions.  (See Order of Service Re: Amended Complaint, filed Feb. 11, 2008, 4:15-21.)  Consequently, the underlying facts concerning unsanitary food conditions at SVSP are not at issue in the instant action.  Further, as such facts are not relevant to plaintiff's claim that defendant Chen failed to adequately investigate plaintiff's complaint of food deprivation, they are not set forth herein.

3

separate occasions, specifically August 17, 18 and 19, 2001, staff deprived plaintiff and his cellmate of their breakfast.  Plaintiff expressed his concern that such "official misconduct" would be his "future plight" at SVSP.  (Decl. John Chen Supp. Mot. Summ. J. ("Chen Decl.") ¶ 3 & Ex. A.)

On September 21, 2001, Chen wrote a response to plaintiff, informing him that it was "unclear whether [plaintiff] tried to resolve this problem through the CDC-602 inmate/parolee appeal process."  Chen therefore encouraged plaintiff to first use the administrative appeals process, as the OIG "usually do[es] not take action unless the appeal process has been completed."  Chen ended the response by explaining the administrative appeals process to plaintiff, and advising him that if he was not satisfied with the director's level response to his administrative appeals, he could contact Chen's office again.  (Id. ¶ 4 & Ex. B.)

On or about January 7, 2002, the OIG received another letter from plaintiff, who by then had been transferred to Tehachapi State Prison ("CCI Tehachapi").[5]  The letter alleged that on September 23, 2001, a correctional officer investigating an unrelated appeal "discarded" the appeal in which plaintiff claimed he had been deprived of food "for approximately fifty days."  (Id. ¶ 5 & Ex. C.)

On January 17, 2002, Chen wrote to plaintiff, informing him that his complaint of food deprivation was "under review."  (Id. ¶ 6 & Ex. D.)

On January 19, 2002, Deputy Inspector General Jim Gatto ("Gatto") filed an "Investigation Summary Report" with respect to plaintiff's claim of food deprivation.[6]  In regard to such claim, Gatto wrote that he had conducted "an in depth review and analysis of all documents received from inmate Chatman," spoken with the SVSP Appeals Office about food-related appeals filed by plaintiff, and reviewed plaintiff's medical records to determine

---

[5]The letter is erroneously dated January 2, 2001.  (Id.)

[6]The report also included an investigation of plaintiff's claims of racial segregation at SVSP and of being adversely transferred to CCI Tehachapi.  Neither of such claims is at issue herein.

4

his weight between January 1, 2000 and December 31, 2001.  The report concluded:

> **Based on information and a review of documentation obtained during this inquiry, the OIG did not find substantial and credible evidence to support the allegation that inmate Chatman was deprived food for a period of fifty days, while he was housed at SVSP.**  During the course of the investigation, the OIG found that inmate Chatman incurred a twenty-pound weight loss during a period of eleven months.  The OIG also found that the SVSP medical department diagnosed inmate Chatman to be 100 pounds overweight while he was housed at SVSP.

(Id. Ex. E at 3) (emphasis in original).)

Consequently, as "[t]he review conducted by the OIG found no new or compelling evidence to warrant further action in this matter," the report recommended that plaintiff's complaint concerning food deprivation at SVSP be closed.  (Id.)

On January 31, 2002, Chen wrote to plaintiff informing him that the OIG had completed its review of plaintiff's allegations of food deprivation and had "concluded that this matter requires no further action by this office."  (Chen Decl. ¶ 8 & Ex. F.)

C.    Mail Tampering

On October 8, 2001, plaintiff filed a prison administrative appeal alleging SVSP mail room employees were "opening and reading [his] legal/confidential incoming correspondence."  (AC Ex. D-11.)

On October 11, 2001, the appeal was rejected at the informal level of review on the ground that none of the letters attached to the appeal was confidential mail.  (Id. Ex. D-10.)

On October 17, 2001, plaintiff wrote a letter to Chen, complaining that SVSP officials had made it "an ongoing practice to open and read my incoming legal/confidential mail without justification."  (Chen Decl. ¶ 9 & Ex. G.)  Plaintiff further stated that "[t]he reason my incoming legal/confidential mail is being intercepted for review is because of my criminal/civil litigation against the administration . . . "; plaintiff asked Chen to become involved in the matter at his earliest convenience.  (Ex. G.)

On December 3, 2001, Chen wrote plaintiff that the OIG had initiated an inquiry into plaintiff's allegations.  (Chen Decl. ¶ 10 & Ex. H.)  On December 4, 2001, Chen sent a memorandum to SVSP Warden A.A. Lamarque ("Lamarque"), advising him of plaintiff's

1  allegations and requesting that Lamarque investigate the matter and respond to Chen within

2  thirty days.  (Chen Decl. ¶ 11 & Ex. I.)

3         On January 7, 2002, Lamarque wrote a letter responding to Chen.  The letter outlined

4  what Lamarque's investigation had revealed, concluding that of the seven claims of mail

5  tampering about which plaintiff had filed an administrative appeal, only one had merit.

6  (Chen Decl. ¶ 12 & Ex. J.)  Specifically, a letter from United States Congressman Samuel

7  Farr had mistakenly been opened by a mail room employee who had not been aware that

8  such letter fell into the category of confidential mail.  (Ex. J.)  Lamarque informed Chen that

9  steps had been taken to correct the situation by informing all mail room staff of the

10 applicable regulation.  (Id.)

11        On January 17, 2002, Chen wrote to plaintiff and informed him that the investigation

12 into plaintiff's complaint of mail tampering had been completed and the OIG had "concluded

13 that the matter requires no further action by this office."  (Chen Decl. ¶ 13 & Ex. D.)

**DISCUSSION**

14

15 A.    Legal Standard

16        Summary judgment is proper where the pleadings, discovery, and affidavits show

17 there is "no genuine issue as to any material fact and that the moving party is entitled to

18 judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  Material facts are those that may

19 affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

20 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable

21 jury could return a verdict for the nonmoving party.  See id.

22        The court will grant summary judgment "against a party who fails to make a showing

23 sufficient to establish the existence of an element essential to that party's case, and on which

24 that party will bear the burden of proof at trial[,] . . . since a complete failure of proof

25 concerning an essential element of the nonmoving party's case necessarily renders all other

26 facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also

27 Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect

28 outcome of suit under governing law; further holding dispute about material fact is genuine

1   "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

2   party").  The moving party bears the initial burden of identifying those portions of the record

3   that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to

4   the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the

5   'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts

6   showing that there is a genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (citing Fed. R.

7   Civ. P. 56(e)).

8       For purposes of summary judgment, the court must view the evidence in the light most

9   favorable to the nonmoving party; if the evidence produced by the moving party conflicts

10  with evidence produced by the nonmoving party, the court must assume the truth of the

11  evidence submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158

12  (9th Cir. 1999).  The court's function on a summary judgment motion is not to make

13  credibility determinations or weigh conflicting evidence with respect to a disputed material

14  fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

15  1987).

16  B.    Evidentiary Objections

17      Before reaching the merits of defendant Chen's motion for summary judgment, the

18  Court will address Chen's objections to certain evidence relied upon by plaintiff in support of

19  his opposition.  In particular, Chen objects to several of plaintiff's requests that the Court

20  take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

21      Under Rule 201, the Court may take judicial notice of "adjudicative facts."  Fed. R.

22  Evid. 201(a).  Adjudicative facts "are simply the facts of the particular case."  Advisory

23  Committee Note to Subdivision (a) (1972 Proposed Rules).  "A judicially noticed fact must

24  be one not subject to reasonable dispute in that it is either (1) generally known within the

25  territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

26  resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

27      Chen first objects to plaintiff's request that the Court take judicial notice of several

28  sections of the California Government Code on which plaintiff has relied in his opposition.

7

1    There is no need for the Court to take judicial notice of the noted code sections; they are not

2    "adjudicative facts" within the meaning of Rule 201, and the Court routinely considers such

3    statutory authority in its legal analysis.  Accordingly, plaintiff's request for judicial notice of

4    section of the California Government Code is denied.

5          Next, Chen objects to plaintiff's request that the Court take judicial notice of two

6    news articles.  The first is an article titled "Green Wall Code of Silence Culture Said to Rule

7    California Prisons."  The article, printed in Prison Legal News in September 2004, discusses

8    testimony given by prison guards and officials at California state legislative hearings in

9    January 20, 2004, concerning the "code of silence" among prison guards who, among other

10   things, created an alliance called the "Green Wall" that vandalized SVSP in1999, used

11   excessive force against prisoners, and harassed prison officials and guards who reported

12   guard misconduct.  According to the article, SVSP Warden Lamarque allegedly impeded

13   investigations into the "Green Wall" alliance at SVSP, and Chen was fired by Governor

14   Schwarzenegger after failing to adequately investigate guard misconduct in a 2002 prison riot

15   at Folsom State Prison.  (Opp. Ex. B13.)

16         The second article, printed in Prison Legal News in July 2007, is titled "Federal Court

17   Continues to Enforce Decade-Old California Prison Guards' 'Code-of-Silence-Ruling.'"

18   According to the article, the district court in Madrid v. Tilton, No. C 90-3094 TEH (N.D.

19   Cal.), decided it would continue to supervise and enforce implementation of its remedial

20   order, entered in 1995, that was designed, among other things, to eliminate the "code of

21   silence" by California prison guards.  In particular, the article notes that subsequent to

22   implementation of the remedial order, "Special Master John Hagar, along with the state's

23   lately reinvigorated Inspector General, maintained strong watchdog supervision of the court's

24   orders."  (Opp. Ex. B15.)

25         In his opposition, plaintiff relies on the above two articles to call into question Chen's

26   veracity, his professional competency, and the adequacy of his investigations into plaintiff's

27   below-discussed complaints.  As Chen points out, however, the articles do not contain

28   adjudicative facts relevant to the instant action and constitute inadmissible hearsay, as the

1    facts related therein are subject to reasonable dispute.

2        Accordingly, plaintiff's request for judicial notice of the articles is denied and the

3    Court will not consider the articles in ruling on Chen's motion for summary judgment.

4    C.    Analysis

5        Plaintiff alleges that Chen's failure to intervene on plaintiff's behalf and require prison

6    officials to provide plaintiff with adequate food and stop interfering with his legal mail

7    violated plaintiff's rights under the First, Eighth and Fourteenth Amendments to the United

8    States Constitution.  In particular, plaintiff alleges that Chen violated plaintiff's constitutional

9    rights by "turn[ing] a blind eye to defendants refusing to provide plaintiff and his cellmate

10   food, which continued on for an additional 37 days after [Chen] was made aware," (AC ¶

11   67), and (2) by "allowing [mail censorship] to continued [sic] for months, as the contents of

12   plaintiff's legal correspondence became known to custody staff and inmates alike."  (AC ¶¶

13   158-59.)

14       A claim brought under 42 U.S.C. § 1983 requires two essential elements: (1) that a

15   right secured by the Constitution or laws of the United States was violated and (2) that the

16   alleged violation was committed by a person acting under the color of state law.  See West v.

17   Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir.

18   1987).

19       In support of plaintiff's claim that Chen unlawfully failed to intervene to cause prison

20   officials to stop violating plaintiff's constitutional rights, plaintiff asserts the following with

21   respect to Chen's legal obligations as the Chief Deputy Inspector General: (1) Chen "was

22   responsible for reviewing departmental policy and procedures for conducting audits of

23   investigatory practices, and other audits, as well as conducting investigations of the

24   Department Corrections," (2) Chen "is the supervising officer of every other defendant, and

25   is responsible for ensu[r]ing that all subordinate staff are in full compliance with all

26   applicable rules, regulations, laws and prison guidelines," and (3) Chen is "required to obey

27   all applicable rules, regulations, laws and prison guidelines."  (AC ¶ 4.)

28       In response, Chen argues he is not liable under 42 U.S.C. § 1983 because he did not

9

1   cause the deprivation of plaintiff's constitutional rights by failing to perform any act he was

2   legally required to perform.  See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (holding

3   one deprives another "of a constitutional right, within the meaning of section 1983, if he does

4   an affirmative act, participates in another's affirmative acts, or omits to perform an act which

5   he is legally required to do that causes the deprivation" of which plaintiff complains).

6       Chen first argues that his failure to require prison officials to provide plaintiff with

7   adequate food and to stop interfering with plaintiff's mail did not violate § 1983 because

8   Chen was not statutorily required, or even authorized, to take such action.  In particular,

9   Chen argues, the statutes pertinent to the creation and duties of the OIG, specifically,

10  California Penal Code sections 6125, et seq., do not give the Inspector General the authority

11  to direct, control or supervise the CDCR or any of its employees; rather, such authority is

12  vested in the government agencies and individuals statutorily authorized to do so.  (Cate

13  Decl. ¶ 5; Decl. Scott M. Kernan (Chief Deputy Secretary of Adult Operations for CDCR)

14  Supp. Mot. Summ. J. ("Kernan Decl.") ¶ 2.)  In that regard, Chen points out, the OIG does

15  not have the power to appoint CDCR employees, and the Inspector General and his staff only

16  have oversight authority over the CDCR, with such authority being limited to conducting

17  investigations and audits and, where necessary, reviewing documents and interviewing

18  CDCR employees in the context of such audits.  (Id.)  Chen further notes that although

19  CDCR employees regularly respond to inquiries from the OIG and cooperate in the OIG's

20  investigations and audits of the CDCR, the OIG does not direct employees of the CDCR to

21  perform, or not to perform, any act. (Kernan Decl. ¶ 2; Chen Decl. ¶ 2.)

22      In support of his argument, Chen cites to statutory authority providing that only the

23  "appointing power" has the authority to discipline a civil service employee.  See Cal. Govt.

24  Code § 19574.  The "appointing power" is defined as "a person or group having authority to

25  make appointments to positions in the State civil service."  Id. § 18524.  With respect to

26  CDCR employees, only management personnel at the CDCR, or their designees, have the

27  statutory authority to hire and, therefore, discipline, CDCR employees.  See Cal. Code Regs.,

28  tit. 15, §§ 3391-3416 (governing employee conduct and hiring practices); (see also Cate

Decl. ¶ 5; Kernan Decl. ¶ 2; Chen Decl. ¶ 2).  Further, the statutes that set forth the duties of the OIG provide only that the OIG has oversight authority over the CDCR, and nowhere provide for disciplinary authority.  See Cal. Penal Code § 6125, et seq.  Consequently, Chen maintains, because the OIG does not possess statutory authority to hire, supervise or discipline CDCR employees, Chen had no authority to direct CDCR employees to either perform or not to perform any act, and, thus, Chen did not cause a constitutional violation by failing to perform any act he was legally required to perform.

In opposition, plaintiff argues that the "Duty Statement" of the Chief Deputy OIG, (Opp. Ex. 1), the Penal Code sections that set forth the duties of the OIG, i.e., Cal. Penal Code § 6125, et seq., and the OIG's Administrative Manual (Opp. Ex. 2), provide the OIG with the authority to directly supervise the actions of CDCR employees.  Plaintiff further argues that Chen had such authority because at the time Chen initiated his investigations into plaintiff's complaints he never said he lacked such authority.

The Court has reviewed the documents and statutes upon which the parties rely and finds the evidence presented by plaintiff fails to create a triable issue with respect to the authority of the OIG to intervene in the operations of the CDCR by supervising or disciplining CDCR employees.  In particular, while the evidence makes clear that in addition to the OIG's authority to audit and set CDCR policies, the OIG has the authority to initiate investigations into individual complaints of misconduct, see Cal. Penal Code § 6126(a)(1); (Opp. Ex. 2 (OIG Administrative Manual § 5, et seq.)), no statutory or other provision gives the OIG the authority to take direct supervisorial action with respect to individual CDCR employees.  Additionally, the Court finds unpersuasive plaintiff's argument that Chen would not have initiated investigations into plaintiff's complaints if he had no authority to take the corrective action requested by plaintiff.  The OIG Administrative Manual provides that upon completion of an investigation into a complaint of misconduct, the action to be taken by the OIG is the preparation of either a "formal written report" that is "directed toward administrators," or a "report-to-file" if that is all the investigation requires.  (Id. § 6.13.) Thus, Chen's lack of authority to intervene in CDCR employee activities is not inconsistent

1   with his authority to investigate and report on plaintiff's misconduct claims.

2        Chen next argues that, even if he were found to be legally obligated to respond to

3 plaintiff's complaints, his response was appropriate.  With respect to plaintiff's claim of food

4 deprivation, Chen points out that when he received plaintiff's August 19, 2001 letter of

5 complaint, he wrote back and appropriately advised plaintiff that the OIG does not usually

6 take action until the administrative appeals process has been completed, and because it was

7 unclear whether plaintiff had filed an administrative appeal, Chen advised him to do so.

8 (Chen Decl. ¶ 4 & Ex. B; see Opp. Ex. 2 (Administrative Manual § 6.1 (requiring OIG to

9 inform complainants of required action when administrative appeals have not been

10 exhausted).)  The letter also explained the administrative appeals process to plaintiff, and

11 advised him that if he was not satisfied with the director's level response to his

12 administrative appeals, he could contact Chen's office again.  (Id.)  Subsequently, when after

13 more than five months had passed, plaintiff, who by that time was incarcerated at CCI

14 Tehachapi, again wrote the OIG about the issue of food deprivation at SVSP, Chen, within

15 two weeks, wrote to plaintiff, acknowledged his renewed complaint, and advised him that the

16 matter was under review.  (Id. ¶ 6 & Ex. D.)  OIG staff then investigated the matter, and

17 notified plaintiff of the OIG's conclusion that there was insufficient evidence to support the

18 allegation that plaintiff had been deprived of food for a period of fifty days at SVSP.  (Id. ¶¶

19 7-8 & Exs. E, F.)

20        In response, plaintiff claims the investigation was inadequate because the OIG's

21 January 19, 2002 "Investigation Summary Report" contains inaccurate factual information

22 about the period of plaintiff's incarceration at SVSP.  Specifically, the report states that in

23 furtherance of the investigation into plaintiff's food claim, the OIG, on January 23, 2002,

24 received the following information from Hank Huebner, the Litigation Coordinator at CCI

25 Tehachapi, where plaintiff at that time was incarcerated:

26             The OIG received information that on December 1, 2000, inmate Chatman
            weighed 250 pounds.  On March 20, 2001, the SVSP medical department

27             determined that inmate Chatman was 100 pounds overweight.  On June 5,
            2001, the SVSP medical department advised inmate Chatman to lose weight.

28             On September 6, 2001, inmate Chatman refused to be weighed by the SVSP

1   medical department.  On November 2, 2001, inmate Chatman weighed 230
2   pounds.

3   (Chen Decl. Ex. E at 2.)

4   Based on such information, the OIG noted: "Inmate Chatman had a 20-pound weight

5   loss during a period of eleven months while being housed at SVSP.  On March 20, 2001, the

6   SVSP diagnosed inmate Chatman to be 100 pounds overweight."  (<u>Id.</u>)  The OIG concluded

7   the report into plaintiff's food deprivation claim as follows:

8   **Based on information and a review of documentation obtained during this
    inquiry, the OIG did not find substantial and credible evidence to support
    the allegation that inmate Chatman was deprived food for a period of fifty**
9   **days, while he was housed at SVSP.**  During the course of the investigation,
    the OIG found that inmate Chatman incurred a twenty-pound weight loss
10  during a period of eleven months.  The OIG also found that the SVSP medical
    department diagnosed inmate Chatman to be 100 pounds overweight while he
11  was housed at SVSP.

12  (<u>Id.</u> at 3 (emphasis in original).)

13  Plaintiff has presented undisputed evidence that, contrary to the statements in the

14  report, he was not at SVSP in March 2001, when the SVSP medical department assertedly

15  determined he was overweight, nor was he at SVSP in June 2001, when the SVSP medical

16  department assertedly advised him to lose weight.  Rather, between November 20, 2001 and

17  February 7, 2001 he was housed at San Quentin State Prison, and between February 8, 2001

18  and July 30, 2001 he was housed at Corcoran State Prison.  Thereafter, between July 31,

19  2001 and December 19, 2001 he was housed at SVSP, and, on December 20, 2001, he was

20  transferred to CCI Tehachapi.  Plaintiff also objects to the accuracy of the report on the

21  ground that Chen has admitted he never interviewed plaintiff personally.  (Pl.'s Decl. Opp.

22  Mot. Summ. J. ¶¶ 25-27.)

23  Based on plaintiff's representations, Chen concedes that the part of the report

24  reflecting the dates on which plaintiff was weighed at SVSP was in error.  Chen argues such

25  error nonetheless does not create a triable issue of fact with respect to whether Chen

26  appropriately investigated plaintiff's complaint and concluded plaintiff's weight loss of

27  twenty pounds between December 2000 and November 2001 did not indicate plaintiff had

28  been denied food for fifty days while he was incarcerated at SVSP.

13

1    The Court agrees.  Although the report concededly contains erroneous information,

2    plaintiff has not shown such misinformation resulted from Chen's failure to properly exercise

3    his authority to investigate plaintiff's complaint, or that the conclusion reached by Chen is

4    unsupported by the evidence.  In particular, plaintiff has not presented evidence

5    demonstrating the twenty-pound weight loss he experienced between the time he was

6    weighed on December 1, 2000 and the time he was weighed again eleven months later on

7    November 2, 2001, occurred solely or even primarily during the approximately three-month

8    period of his incarceration at SVSP, specifically, from his arrival at SVSP at the end of July

9    2001 until he was weighed on November 2, 2001, or that such weight loss was the result of

10   any denial of adequate food during that time period.  Nor has plaintiff presented evidence

11   demonstrating such weight loss was cause for concern, given the undisputed evidence that

12   plaintiff had been advised, in March 2001, that he was 100 pounds overweight and thereafter

13   advised, in June 2001, that he had to lose weight.  Further, plaintiff has failed to present

14   evidence demonstrating an inaccuracy of any nature resulted from his not having been

15   personally interviewed by Chen, and plaintiff points to no requirement in either the relevant

16   statutes, the OIG Duty Statement, or the OIG Administrative Manual that the OIG must

17   interview every complainant whose misconduct claim is investigated.

18   Chen additionally argues that he adequately investigated plaintiff's claim of mail

19   tampering.  In particular, Chen has presented evidence of the following:  Plaintiff first lodged

20   his complaint of mail tampering with the OIG by a letter dated October 17, 2001; on

21   December 3, 2001, Chen wrote a letter to plaintiff advising him that Chen would inquire into

22   the matter; on December 4, 2001, Chen asked Warden Lamarque to respond to plaintiff's

23   allegations.  (Chen Decl. ¶¶ 9-11 & Exs. G, H, I.)  Warden Lamarque reported back to Chen

24   on January 7, 2002, stating his investigation revealed one letter mistakenly had been opened

25   by a mail room employee who had not been aware such correspondence came within the

26   category of confidential mail, and that steps had been taken to correct the situation by

27   informing all mail room staff of the applicable regulation.  (Id. ¶ 12 & Ex. J.)  Ten days later,

28   on January 17, 2002, Chen wrote to plaintiff and informed him that the investigation into his

14

1  complaint of mail tampering had been completed, and the OIG had "concluded that the

2  matter requires no further action by this office."  (Id. ¶ 13 & Ex. D.)

3       In opposition, plaintiff argues Chen's investigation was inadequate.  Plaintiff does not,

4  however, present evidence that calls into question any of the facts set forth above.  Based on

5  such facts, the Court finds plaintiff has not created a triable issue with respect to the

6  adequacy of Chen's investigation into plaintiff's claim of mail tampering.

7       In sum, in view of the undisputed legal authority and facts, the Court concludes

8  plaintiff has failed to make a showing sufficient to establish the existence of an element

9  essential to his case, specifically, that Chen caused the deprivation of a constitutional right by

10 performing, or failing to perform, a legally required act.[7]  See Brown v. California Dept of

11 Corrections, 554 F.3d 747, 751-52 (9th Cir. 2009) (finding summary judgment properly

12 granted in favor of prison official who lacked authority to correct alleged constitutional

13 violation).  Accordingly, summary judgment will be granted in favor of Chen.  See Celotex,

14 477 U.S. at 322-23.

**CONCLUSION**

16      For the foregoing reasons, defendant Chen's motion for summary judgment is hereby

17 GRANTED.  The Court will await the conclusion of the case to enter a judgment with

18 respect to Chen, in order that a single judgment may be entered resolving all claims against

19 all defendants.

20 //

21 //

22 //

23 //

24 //

---

27      [7]In light of this finding, the Court does not reach Chen's argument that he is entitled to qualified immunity on plaintiff's claims.  Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

15

1        Additionally, plaintiff's application for leave to proceed in forma pauperis is hereby

2   DENIED as moot.[8]

3        This order terminates Docket Nos. 103 and 110.

4        IT IS SO ORDERED.

5   DATED: March 27, 2009

6                                                    _____
                                                     MAXINE M. CHESNEY
7                                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   _____

24        [8]When plaintiff filed the instant action, he sought leave to proceed in forma pauperis
     ("IFP").  The Court denied the request under 28 U.S.C. § 1915(g), which states that IFP
25   status may not be granted to a prisoner who has had three or more actions dismissed on
     grounds that the actions were frivolous, malicious, or failed to state a claim upon which relief
26   may be granted.  (Docket No. 6.)  On remand, however, the Court determined plaintiff was
     not subject to § 1915(g), and proceeded to review the complaint under the statutory
27   provisions applicable to prisoners proceeding IFP, i.e., 28 U.S.C. § 1915(e).  (Docket No.
     26.)  Plaintiff recently filed an application for leave to proceed IFP herein.  (Docket No.
28   103.)  In view of the Court's prior determination that the action would proceed under §
     1915(e), plaintiff's request to proceed IFP is moot.

16