IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CHATMAN,<br><br>        Plaintiff,<br><br>  v.<br><br>RICHARD EARLY, et al.,<br><br>        Defendants.<br>_____ | No. C 03-2820 MMC (PR)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS AND FOR**<br>**SUMMARY JUDGMENT**<br><br>**(Docket No. 105)** |

    In 2003, plaintiff Charles Chatman, a California state prisoner currently incarcerated at High Desert State Prison, Susanville, and proceeding pro se, filed the above-titled civil rights complaint pursuant to 42 U.S.C. § 1983.  In 2004, the action was dismissed by the Court and, in 2005, the Court of Appeals vacated the order of dismissal and remanded the matter.  Thereafter, by order filed October 16, 2006, the Court found plaintiff had stated cognizable claims for relief based on his allegations of food deprivation, retaliation and interference with his mail.  The Court ordered the complaint served on numerous prison officials at Salinas Valley State Prison ("SVSP"), supervisory officials employed by the California Department of Corrections and Rehabilitation ("CDCR"), and John Chen, Chief Deputy Inspector General for the California Office of the Inspector General ("OIG").  Subsequently, by order filed February 11, 2008, the Court directed plaintiff to serve defendants with his Amended Complaint and scheduled the filing of dispositive motions.

    Now before the Court is the motion to dismiss and for summary judgment filed by

certain of the defendants employed at SVSP and by CDCR, all of whom are represented by the California Attorney General's Office (hereinafter, "AG defendants").[1,2] Plaintiff has filed opposition to the motion, and the AG defendants have filed a reply.

The Court, having read and considered the papers filed in support of and in opposition to the motions, rules as follows.

## BACKGROUND

Plaintiff makes the following allegations in his Amended Complaint:

On or about July 29, 2001, plaintiff was transferred from Corcoran State Prison to SVSP. Approximately one and one-half weeks later, SVSP was placed on lockdown status and the inmates were served food in their cells. Plaintiff and his cellmate complained to SVSP custody staff that the food was being served in unsanitary conditions. During the lockdown, numerous SVSP employees brought food to plaintiff's cell but refused to give plaintiff and his cellmate breakfast and lunch because they had not turned on the "bright lights," as opposed to the "regular lights," in their cell. The lockdown and food deprivation lasted from August 16 through October 9, 2001. As a result of being deprived of adequate food, plaintiff suffered dizziness, vomiting, headaches, back pain, hypertension and leg numbness, and he lost more than twenty pounds.

Plaintiff filed administrative appeals and wrote complaint letters to SVSP and CDCR officials, as well as to a prisoner rights organization, about the food deprivation. He also wrote the OIG a complaint letter, requesting an investigation into the matter. None of the prison or CDCR officials or the OIG's office intervened on plaintiff's behalf.

On August 29, 2001, plaintiff was returned to his cell from the infirmary, where he was seen for medical reasons. Plaintiff was told to strip naked for a search, which he did;

---

[1] As discussed below in Section C, not all of the AG defendants have been served; accordingly, the instant dispositive motion has been filed on behalf of the following defendants only: Basso, Berry, Broomfield, Calderon, Edwards, Ellis, Galloway, Goodrum, Holt, Jansen, Juarez, Kircher, Lamarque, Lord, Monteiro, Negrette, Perez, Rice, Rios and Saucedo. (Mot. Summ. J. at 1 & n.1.)

[2] Defendant Chen is represented by counsel for the OIG and has filed a separate motion for summary judgment. That motion is addressed by separate order.

2

because of his health concerns, however, he refused to comply with a correctional officer's demand that he walk barefoot for twenty-five yards on the cold concrete floor. As a result, plaintiff was placed on "Management Control Status" ("MCS") for four days, during which time his personal property, including essential items such as toilet paper, soap, a toothbrush and toothpaste, was confiscated, the water supply to his cell was turned off, and he was denied access to a doctor. Subsequently, plaintiff was charged with a rules violation for disobeying a direct order. Plaintiff appealed the matter of his placement on MCS to SVSP and CDCR officials, but his appeals were denied.

After plaintiff began filing administrative appeals and writing complaint letters, officials at SVSP and at the California Correctional Institute at Tehachapi ("CCI Tehachapi")[3] started interfering with, confiscating and censoring his legal mail. Plaintiff filed administrative appeals with SVSP and CDCR officials concerning the legal mail problems, and also wrote a complaint letter to the OIG regarding censorship of his legal correspondence. None of the prison or CDCR officials or the OIG's office intervened on plaintiff's behalf.

## DISCUSSION

By order filed February 11, 2008, the Court found plaintiff's allegations state the following cognizable claims for relief against the AG defendants: (1) the violation of plaintiff's First and Fourteenth Amendment rights resulting from defendants' confiscation and censorship of plaintiff's legal mail in retaliation for plaintiff's having complained about the conditions of his confinement; (2) the violation of plaintiff's First, Eighth and Fourteenth Amendment rights resulting from defendants' failure to provide plaintiff with adequate food while he was on lockdown, in retaliation for plaintiff's having complained about unsanitary food conditions; and (3) the violation of plaintiff's First, Eighth and Fourteenth Amendment rights resulting from defendants' placement of plaintiff on MCS, and consequent denial of basic necessities, in retaliation for plaintiff's having complained about unsanitary food

---

[3] Plaintiff was transferred to CCI on December 19, 2001.

3

conditions.

A.  Motion to Dismiss

Defendants move to dismiss plaintiff's claims of food deprivation and wrongful placement on MCS on the ground plaintiff has failed to exhaust his administrative remedies, as is required under 42 U.S.C. § 1997(e).

1.  Legal Standard

Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[4] If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the complaint without prejudice. Id. at 1120.

2.  The Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The State of California provides its prisoners and parolees the right to appeal

---

[4]If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop the record. Id. at 1120 n.14. Here, plaintiff was given such notice by the Court in the Order of Service Re: Amended Complaint. (Order, filed Feb. 11, 2008, at 8:9-17.)

4

administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 ("CCR"), § 3084.1(a).[5] In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal level appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("Director"). See CCR § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38. At each appeal level, the inmate "must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." CCR § 3084.6(c).

The exhaustion requirement cannot be satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 84. Rather, "proper exhaustion" of available administrative remedies is required. Id. at 92. The requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

An action must be dismissed unless the prisoner first exhausted his available administrative remedies before he filed suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

3.   Analysis

Defendants argue plaintiff did not exhaust his administrative remedies as to his food deprivation and MCS placement claims because he did not receive a decision from the Director's level of review with respect to either claim.

In support of their argument, defendants submit a declaration by N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch ("IAB") at the CDCR. According to

---

[5]Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

5

Grannis, the IAB keeps an electronic database containing information about each inmate administrative appeal that has been addressed at the Director's level of review. (Decl. N. Grannis Supp. Mot. Dismiss ("Grannis Decl.") ¶ 3.) Grannis has attached to her declaration the IAB computer printout of a report showing each inmate appeal to the Director's level of review that was filed by plaintiff and accepted for review between 1993 and April 2008. (Id. ¶ 5 & Ex. A at 1-4.) Additionally, the report shows each inmate appeal to the Director's level of review that was filed by plaintiff and was "screened out," i.e., rejected for procedural reasons, between 1993 and April 2008. (Id. at 4-9.)

In particular, the report shows two appeals submitted by plaintiff concerning the conditions of his confinement at SVSP were addressed at the Director's level of review. Specifically, Appeal No. SVSP-01-04025,[6] categorized as a complaint pertaining to "mail," was accepted for review on March 7, 2002, and was denied on May 20, 2002 (id. at 1); Appeal No. SVSP-01-03785, categorized as a complaint pertaining to "living conditions," was accepted for review on March 13, 2002, and was denied on May 10, 2002, (id.). Defendants contend that neither of the appeals included complaints about the food deprivation or MCS placement at issue herein, and, consequently, that such claims have not been exhausted.

In opposition to the motion to dismiss, plaintiff does not dispute defendants' showing that none of his appeals concerning the claims challenged as unexhausted was addressed on the merits at the Director's level of review. Rather, he argues the Court should allow those claims to proceed because defendants intentionally prevented him from pursuing his appeals about food deprivation and MCS placement by destroying the appeals and wrongly screening them out as untimely, and because he acted with due diligence in attempting to exhaust his administrative appeals.

---

[6]The IAB printout lists appeals both by their Inmate Appeals Branch Number and their Institutional Log Number. The former is the number assigned to the appeal at the Director's level of review, while the latter is the number used to identify the appeal as it makes its way through the informal and formal levels of review at the institutional level. The Court will use the Institutional Log Number to identify the noted appeals at all levels of review.

6

The Court, as set forth below, next reviews the evidence presented by the parties, in order to determine whether plaintiff's claims have been exhausted.

According to the allegations in the Amended Complaint, plaintiff was denied adequate food from August 16, 2001 through October 9, 2001. Under applicable regulations, plaintiff thus was required to submit an institutional level appeal with respect to his claim of food deprivation by no later than October 31, 2001, i.e., fifteen working days after the last alleged incident of food deprivation. See CCR § 3084.6(c). According to the record of appeals filed by plaintiff at SVSP, no appeal concerning the issue of food deprivation was submitted during the relevant time period, or at any time thereafter. (Opp. Ex. A6.) Plaintiff maintains, however, that in "the middle of September 2001" he did submit such an appeal to the housing unit officer for mailing to the SVSP appeals coordinator. (Pl.'s Decl. Supp. Opp. Mot. Dismiss ("Pl.'s Decl.") ¶ 5.)

Additionally, according to the allegations in the Amended Complaint, plaintiff was wrongly placed on MCS for four days, from August 29, 2001 through September 1, 2001. Under CCR § 3084.6, plaintiff thus was required to submit an institutional level appeal with respect to his claim of wrongful MCS placement by no later than September 24, 2001, i.e., fifteen working days after he was released from MCS. According to plaintiff and the record of appeals filed by plaintiff at SVSP, plaintiff filed, on September 7, 2001, an appeal concerning his access to his property while on MCS. (Pl.'s Decl. ¶ 4 & Opp. Ex. A6.)

Plaintiff states that on September 23, 2001, correctional officer defendant R. Rice ("Rice") called plaintiff into his office to discuss the appeals, and at that time expressed displeasure with plaintiff for plaintiff's having filed, in August and September 2001, four inmate appeals, including the food deprivation and MCS placement appeals; in particular, according to plaintiff, Rice "threaten[ed] and curs[ed]" plaintiff to dismiss his appeals. As a result, plaintiff states, he "reluctantly dismissed the 602 appeals on living conditions and legal mail, but refused to dismiss the food deprivation and MCS issues," and Rice then threatened to "trash" the food deprivation and MCS placement appeals. (Pl.'s Decl. ¶¶ 3-15.) Subsequently, plaintiff states, he submitted, on October 9, 2001, another appeal concerning

7

the matter of food deprivation, and on or about the third week of October 2001 Rice again called plaintiff into his office, "threaten[ed] and cursed" plaintiff for filing the appeal, and stated he would "trash" the appeal when plaintiff refused to dismiss it. (Id. ¶¶ 17-19.)

Plaintiff states he did not become aware that Rice had not properly processed his appeals until he arrived at CCI Tehachapi in the third week of December 2001,[7] after which, on January 1, 2002, plaintiff sent a letter to the Director of the CDCR, complaining that his MCS placement and food deprivation appeals had been destroyed by Rice. (Opp. Ex. A9.)[8] Plaintiff states that in support of such assertion, he attached to his letter a copy of the appeal he filed at SVSP concerning his MCS placement. Plaintiff did not attach to his letter, however, a copy of the noted food deprivation appeal, nor does any such appeal appear among the approximately 150 pages of exhibits filed by plaintiff with his Amended Complaint or the sixteen pages of documents filed by plaintiff in support of his opposition to the motion to dismiss.

In response to plaintiff's letter, the Director, on February 1, 2002, returned plaintiff's documents to him and informed him that he must resolve his appeals through the inmate appeals process. (Opp. A10.) Plaintiff claims he next forwarded the letter and supporting documents to Warden Lamarque "to make sure the appeals coordinator answer[ed] it," after which Lamarque forwarded the matter to the appeals coordinator at CCI Tehachapi, and the appeals coordinator sent the documents back to plaintiff. (Opp. ¶¶ 23-24.) On February 20, 2002, plaintiff filed an administrative appeal with the CCI Tehachapi appeals coordinator, and, on February 26, 2002, the appeal was denied as untimely. (Opp. ¶ 25 & Exs. A11-A14.) Plaintiff did not attempt to appeal the matter further before filing the instant action on June 6, 2003.

---

[7]At some point, plaintiff learned that his MCS placement appeal had been denied on November 27, 2001 at the informal level of review and that he had not received notice of said denial. (Decl. ¶ 16.) Because plaintiff has not provided the date on which he became aware his appeal had been denied, the Court will rely on plaintiff's representation, set forth above, that he did not become aware until the third week of December 2001 that his MCS placement appeal had not been timely processed.

[8]The letter is erroneously dated January 2, 2001. (Id.)

8

Based on the above facts, the Court finds defendants have carried their burden of raising and proving the absence of exhaustion. See Jones v. Bock, 549 U.S. 199, 218 (2007). Specifically, the evidence presented by the parties shows that plaintiff did not "properly" exhaust either his food deprivation appeals or his MCS placement appeal, because none of those appeals was addressed at the Director's level of review. See Woodford, 548 U.S. at 92 (holding procedurally proper exhaustion of administrative remedies necessary to satisfy exhaustion requirement). Further, while the Supreme Court, in Woodford, left open the possibility that proper exhaustion might not be required where prison administrators "devise procedural requirements that are designed to trap unwary prisoners and thus to defeat their claims," id. at 102, the Court finds, for the following reasons, that no such circumstances occurred in the instant matter.

As an initial matter, the Court notes that it cannot reasonably infer from the allegations in the Amended Complaint and the documents attached thereto that during the period of plaintiff's incarceration at SVSP he could not have properly exhausted an appeal concerning his claim of food deprivation. Specifically, plaintiff has alleged no facts showing he was unable to discover, prior to his arrival at CCI Tehachapi, that he had not received a response to either of his two food deprivation appeals, or that he was unable to make further use of the administrative appeals process to inform prison officials he believed those appeals had been destroyed by Rice and to seek leave to file another food deprivation appeal. In particular, the record herein reflects that plaintiff submitted his first food deprivation appeal for informal level review in "mid-September," and submitted his second food deprivation appeal for informal level review on October 9, 2001. Under applicable regulations, the informal level review of an inmate's appeal must be completed within ten working days of the date the prisoner submits the appeal. CCR § 3084.6(b)(1). Thus, both of plaintiff's appeals should have been answered by October 23, 2001. Plaintiff claims he did not become aware that his appeals had not been processed until he was moved to CCI Tehachapi in late December 2001; plaintiff never claims, however, that he was unaware of the above-referenced time-limit regulation, or that he was prevented from inquiring into the status of his

9

appeals. Further, as noted by defendants, at the same time plaintiff allegedly filed his first food deprivation appeal, he also filed an appeal concerning unsanitary food conditions (Appeal No. SVSP-01-3785), and he received his informal level response to the latter appeal on October 19, 2001. (AC Ex. C at 3.) Having received a timely response to one of his food-related appeals, plaintiff would have had cause to question why he had not received a response to his other food-related appeal. On October 23, 2001, however, the date by which plaintiff should have received responses to both of his food deprivation appeals, he submitted his unsanitary food conditions appeal for first level review, but made no mention of the fact he had not received a response to his food deprivation appeals, or that he feared said appeals might have been destroyed by Rice. As noted, plaintiff did not make any attempt to pursue the status of his food deprivation appeals until January 2002.

      Similarly, with respect to plaintiff's MCS placement claim, the Court cannot reasonably infer from the allegations in the Amended Complaint and the documents attached thereto that during the period of plaintiff's incarceration at SVSP he could not have properly exhausted the MCS placement appeal he submitted for informal review on September 6, 2001. In this instance, plaintiff states he could not pursue the appeal because he never received a timely response thereto. As with his food deprivation appeals, however, plaintiff never states he was unaware of the regulation providing a ten-day time limit for answering appeals, or that he was prevented from inquiring into the status of the appeal. Additionally, as discussed above in connection with plaintiff's food deprivation appeals, plaintiff's receipt of a response to his unsanitary food condition appeal, which appeal plaintiff states he filed at approximately the same time he filed his MCS placement appeal, would have been cause for plaintiff to question why he had not received a response to his MCS placement appeal. Nevertheless, as with his food deprivation appeals, plaintiff took no action to pursue the status of his MCS placement appeal until January 2002.

      Further, with regard to both the food deprivation and MCS placement appeals, plaintiff has not shown he was unable to properly pursue administrative remedies once he learned, in the third week of December 2001 at CCI Tehachapi, that the appeals had not been

10

processed at SVSP. Rather, plaintiff chose to bypass the appeals process altogether, by writing a letter to the Director of the CDCR, complaining that his appeals had not been addressed. After the Director returned the documents to plaintiff and advised him that he must comply with the appeals process, plaintiff again chose to bypass that process, sending the materials on to Warden Lamarque at SVSP instead of submitting them to the appeals coordinator. Lamarque then sent the materials to the appeals coordinator at CCI Tehachapi, who returned them to plaintiff. Consequently, by the time plaintiff filed an appeal at CCI Tehachapi, it was subject to being denied as untimely. Contrary to plaintiff's assertions, the Court finds no indication that such denial was improper, or that plaintiff's untimely filing should have been excused. Specifically, plaintiff has not presented evidence that shows the denial resulted from prison officials' requiring plaintiff to comply with procedural requirements that "trapped" him and made it impossible for him to file a timely appeal. See Woodford, 548 U.S. at 102. Although the Court cannot determine whether plaintiff's food deprivation and MCS placement appeals would have been granted or denied if he had properly pursued his administrative remedies, it is clear from the facts presented herein that he did not even attempt to pursue those remedies.

     Plaintiff argues that even if his claims were not properly exhausted they should be allowed to proceed because of his good-faith efforts to comply with the administrative appeals process. Plaintiff's asserted good-faith efforts do not satisfy the exhaustion requirement, however. As the Supreme Court made clear in Woodford, exhaustion is mandatory and no longer left to the discretion of the district court. See id. at 84. Consequently, because the Court has found plaintiff did not properly exhaust all of his available administrative remedies before filing suit, his unexhausted claims must be dismissed. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). Moreover, even if a prisoner's good faith efforts could suffice to relieve him of his obligation to exhaust his administrative remedies, plaintiff's showing herein would be inadequate. As defendants note, plaintiff was familiar with the administrative appeals process, having filed eight appeals at SVSP between August 16, 2001 and October 31, 2001, yet he waited until well beyond the

11

1 date by which he should have received an answer to his food deprivation and MCS
2 placement appeals before pursuing those matters further.  Additionally, when he did pursue
3 them, he did so by bypassing established administrative appeals procedures.

4       Based on the foregoing, the Court finds plaintiff did not properly exhaust his
5 administrative remedies with respect to his claims of food deprivation and wrongful MCS
6 placement, and that his failure to do so was not the result of procedural requirements
7 designed to defeat plaintiff's ability to exhaust his claims.  Additionally, the exhaustion
8 requirement is not satisfied by plaintiff's asserted good faith efforts to comply with the
9 administrative appeals process.  Accordingly, the Court will grant defendants' motion to
10 dismiss plaintiff's food deprivation and MCS placement claims.

11 B.    <u>Motion for Summary Judgment</u>

12       Defendants move for summary judgment on plaintiff's claim that defendants, in
13 violation of plaintiff's First and Fourteenth Amendment rights, confiscated and censored
14 plaintiff's legal mail in retaliation for plaintiff's having complained about the conditions of
15 his confinement.

16     1.    <u>Legal Standard</u>

17       Summary judgment is proper where the pleadings, discovery and affidavits show there
18 is "no genuine issue as to any material fact and that the moving party is entitled to judgment
19 as a matter of law."  <u>See</u> Fed. R. Civ. P. 56(c).  Material facts are those that may affect the
20 outcome of the case.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A
21 dispute as to a material fact is genuine if the evidence is such that a reasonable jury could
22 return a verdict for the nonmoving party.  <u>See</u> <u>id.</u>

23       The court will grant summary judgment "against a party who fails to make a showing
24 sufficient to establish the existence of an element essential to that party's case, and on which
25 that party will bear the burden of proof at trial[,] . . . since a complete failure of proof
26 concerning an essential element of the nonmoving party's case necessarily renders all other
27 facts immaterial."  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>see also</u>
28 <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248 (holding fact is material if it might affect

12

outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

2. Analysis

The following facts concerning plaintiff's incoming mail claim are undisputed:[9] On or about October 8, 2001, plaintiff submitted an administrative appeal claiming that prison officials were "repeatedly opening and reading [his] legal/confidential incoming correspondence from government officials." (Young Decl. Ex. G at AGO 15). Attached to the appeal were eight envelopes that plaintiff claimed had contained incoming confidential

---

[9]In the Amended Complaint, plaintiff alleges that on numerous occasions prison officials at SVSP unlawfully opened both his incoming and outgoing confidential correspondence. As defendants point out, however, the undisputed evidence presented by the parties shows that the only mail tampering claim that was exhausted by plaintiff through the Director's level of review was his claim concerning the opening of eight pieces of incoming confidential correspondence, which claim was exhausted by way of Appeal No. SVSP-01-04025. (See AC Ex. D1-50; Decl. Christopher Young Supp. Mot. Summ. J. ("Young Decl.") Ex. G at AGO 15-30.) Consequently, that is the only mail claim properly before the Court.

13

mail and had been opened outside his presence. (Id. at AGO 23-30.). The appeal was bypassed at the informal level of review and forwarded for first level review to defendant E. Rios ("Rios"), the mail room supervisor at SVSP. (Id. at AGO 15-16.)

On December 4, 2001, Rios interviewed plaintiff about his appeal. Rios reviewed the documents attached to the appeal and determined that only one of the envelopes, a piece of mail sent to plaintiff from the California Department of Corrections Institution Division, had been opened, in error, by mail room staff. (Decl. E. Rios Supp. Mot. Summ. J. ("Rios Decl.") ¶ 9; Young Decl. Ex. G at AGO 17.) Specifically, on September 12, 2001, mail room staff stamped the letter as having been "opened in error" because it had not been identified as legal mail on the envelope. (Rios Decl. ¶ 9; Young Decl Ex. G. at AGO 29.) The letter was then re-sealed and delivered to plaintiff on September 13, 2001. (Rios Decl. ¶ 9 & Ex. A2 (SVSP log of incoming confidential mail).) In response to plaintiff's appeal, Rios apologized to plaintiff, and spoke with mail room staff with respect to the importance of preserving the confidentiality of mail deemed legal and/or confidential. (Rios Decl. ¶ 9; Young Decl. Ex. G AGO 17.)

Plaintiff submitted his appeal to the second level of review. On January 22, 2002, the appeal was granted in part by defendant A. Calderon ("Calderon"), Chief Deputy Warden at SVSP, who found Rios had correctly concluded that only one piece of confidential mail had been opened in error; Calderon further found Rios had taken appropriate action to remedy the situation. (Young Decl. Ex. G AGO 20-21.)

Plaintiff submitted his appeal to the Director's level of review. On May 20, 2002, Linda Rianda, Chief of the Inmate Appeals Branch, denied the appeal, finding the second level review had properly determined that one piece of plaintiff's confidential mail had been opened in error, and that appropriate corrective action had been taken. Rianda concluded: "This administrative error does not constitute a violation of the appellant's constitutional rights." (AC Ex. D1-3.)

Additionally, at plaintiff's request, the Office of the Inspector General ("OIG") sent to SVSP Warden Lamarque, on December 5, 2001, a memorandum advising Lamarque of

plaintiff's allegations that his confidential mail was being tampered with. Specifically, plaintiff had sent to the OIG a copy of a letter he had received from United States Congressman Sam Farr, which letter plaintiff claimed had been opened outside of his presence. The OIG asked Lamarque to investigate the matter and to respond to the OIG within thirty days. (Pl.'s Opp. Ex. C6.)

On January 7, 2002, Lamarque wrote a letter responding to the OIG. The letter informed the OIG that Lamarque's investigation revealed Congressman Farr's letter had been erroneously opened as non-confidential mail because the envelope did not contain the name of the sending official, and the mail room staff person who opened the mail did not realize legal mail that does not contain the name of the sender would be deemed confidential as long as the mail was "franked" by the official. As a result, Lamarque wrote, all mail room staff had been advised of the franking rule with respect to confidential mail. (AC Ex. C20.)

As noted, plaintiff claims his constitutional rights were violated because prison officials opened eight pieces of mail outside his presence, which mail should have been designated as confidential under prison regulations. Under such regulations, an inmate may correspond confidentially with the persons, legal organizations, public agencies and governmental entities listed at CCR § 3141(c). The list includes state and federal officials, county agencies, state and federal judges and courts, attorneys listed with a state bar association, the director of the CDCR, and certain legal service organizations. CCR § 3141(c). Incoming mail will be processed as confidential mail if the envelope "bears the name or title and a return address of persons and the office of persons listed in Section 3141." Id. § 3143. Incoming mail bearing only a department, agency or office return address without any reference to the name or title of the persons listed in CCR § 3141 will be processed by designated employees as non-confidential mail. Id. Confidential mail may be opened and inspected for contraband only in the presence of the inmate. CCR § 3144. The inspecting correctional officers may not read the contents of confidential mail. Id.

Defendants argue they are entitled to summary judgment because plaintiff has not presented evidence that any of the defendants, each of whom is a supervisory official,

actually opened and read the mail at issue, or that any of the mail qualified as legal mail. In response, plaintiff argues defendants were responsible for ensuring that his confidential mail not be opened outside his presence. Even assuming, arguendo, defendants had such responsibility, however, plaintiff's argument is unavailing, as plaintiff has not created a triable issue of material fact with respect to whether the mail here at issue was legal mail.

At the outset, the Court acknowledges that opening and inspecting "legal mail" outside the presence of a prisoner may have an impermissible chilling effect on the constitutional right to petition the government, see O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (citing Laird v. Tatum, 408 U.S. 1, 11 (1972)), and that where a prisoner demonstrates such a chilling effect, prison officials must establish that legitimate penological interests justify the policy or practice, see id. at 327.

Only legal mail is subject to the rationale of O'Keefe, however, as it is settled that prison officials may inspect non-legal mail for contraband without violating a prisoner's constitutional rights. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). The category of mail that qualifies as legal mail is not exhaustive; for example, although mail from a prisoner's lawyer is legal mail, mail sent to a prisoner from the courts is not, because mail issued by a court is a matter of public record and can be accessed by prison officials through traditional means. Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). Id. Similarly, mail sent to prisoners from public agencies, public officials, news media and recognized civil rights groups falls within the ambit of "media mail," not legal mail, Mann v. Adams, 846 F.2d 589, 590 (9th Cir. 1988) (per curiam), and, as such, is not entitled to any special preference in the face of prison security considerations, id.

Here, plaintiff alleges that defendants opened outside his presence, and possibly read, confidential mail sent to him in envelopes from the following: (1) "U.S. House of Representatives," Washington, D.C., franked with the name "Sam Farr"; (2) "State of California, State Personnel Board"; (3) "United States Postal Service, Customer Relations Coordinator"; (4) "United States Postal Service"; (5) "American Amputee Foundation";

16

1  (6) "State of California Department of Mental Health Services"; (7) "Institutions Division,
2  Central Region"; and (8) "State of California Board of Control, Gov't Claims Div." (Young
3  Ex. G AGO 23-30).  Even when the evidence is considered in the light most favorable to
4  plaintiff, plaintiff has not presented evidence sufficient to raise a genuine issue of material
5  fact with respect to his claim that defendants' actions violated his constitutional rights.  In
6  particular, plaintiff has not presented evidence that any piece of legal mail was opened
7  outside of his presence.  Instead, each of the items of incoming mail submitted by plaintiff
8  involved correspondence either from an individual other than plaintiff's attorney, from a state
9  or federal official or agency, or from a private non-profit organization, none of which meets
10 the definition of legal mail for purposes of establishing a constitutional violation under 42
11 U.S.C. § 1983.  See Keenan, 83 F.3d at 1094 (holding mail issued by courts and similar
12 agencies generally constitutes matter of public record that can be accessed by prison officials
13 through traditional means); Mann, 846 F.2d at 590.

   Based on the above, the Court finds defendants are entitled to summary judgment on
15 plaintiff's mail tampering claim.  See Celotex Corp., 477 U.S. at 323.[10]

16 C.   Unserved Defendants

17    In its October 16, 2006 Order of Service, the Court directed the United States Marshal
18 ("Marshal") to serve thirty-six AG defendants.  The Marshal successfully served eighteen of
19 those defendants, who thereafter made an appearance through counsel.[11]  Additionally, the
20 Marshal, in response to the Court's February 11, 2008 Order of Service Re: Amended
21 Complaint, successfully served defendants Lamarque and Goodrum.  Service was not
22 effected with respect to the sixteen remaining AG defendants, however, because said

---

[10] In light of the Court's determination that defendants did not violate plaintiff's constitutional rights, the Court does not reach defendants' argument that they are entitled to qualified immunity on plaintiff's claim.  Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

[11] The eighteen AG defendants successfully served at that time were:  Basso, Berry, Broomfield, Calderon, Edwards, Ellis, Galloway, Holt, Jansen, Juarez, Kircher, Lord, Monteiro, Negrette, Perez, Rice, Rios and Saucedo.

17

defendants could not be located.[12]

After reviewing plaintiff's Amended Complaint, the Court, by order filed February 11, 2008, informed plaintiff that the sixteen defendants had not been served, and advised plaintiff of his responsibility to ensure service was effected. Specifically, the Court informed plaintiff as follows:

> While a plaintiff who is incarcerated and proceeding in forma pauperis may rely on service by the Marshal, such plaintiff "may not remain silent and do nothing to effectuate such service"; rather, "[a]t a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent defects of which [he] has knowledge." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987).
>
> When plaintiff filed his original complaint, he did not provide sufficient information to allow the Marshal to locate and serve the sixteen referenced defendants, nor has he provided any further information in that regard since the time the summonses for these defendants were returned by the Marshal as unexecuted. Accordingly, at this time the Court will not reissue summons and order the Marshal to attempt to effectuate service of the AC on these defendants; rather, plaintiff must either himself effectuate service on said defendants, or provide the Court with sufficient information such that the Marshal is able to effectuate such service.

(Order, filed Feb. 11, 2008, at 5:16-6:5.)

On May 2, 2008, plaintiff filed a "Status Report on Defendants' Process Service of the Complaint," (Docket No. 104), in which he asserts the Marshal should have been able to successfully serve each of the unserved defendants on the basis of the identifying information plaintiff provided with respect to each defendant in the original complaint. Plaintiff, however, did not provide any additional information to enable the Marshal to serve the defendants as required by the Court's February 11, 2008 order.

In sum, plaintiff was advised more than one year ago that sixteen AG defendants had not been served and that he must remedy the unsuccessful service either by serving the defendants himself or by providing the Court with an address at which those defendants could be served. Plaintiff has done neither. Consequently, sufficient grounds exist for dismissal, without prejudice pursuant to Rule 4(m), of the claims against the sixteen unserved

---

[12] The unserved defendants are: Chavez, Dickerson, Early, Edwards, Engles, Gillary, Gomez, Mendoza, Miranda, Munger, Parson, Peterson, Platting, Ruiz, Sanchez and Thomas.

1  defendants. See Walker, 14 F.3d at 1422.

2  Moreover, although the sixteen referenced defendants have not been served, it is clear 3 the claims against them are subject to dismissal for the reasons discussed above. 4 Specifically, the allegations against the unserved defendants are the same as those against the 5 other AG defendants, and there is no suggestion in the complaint and exhibits attached 6 thereto, or in the briefs and exhibits filed in connection with the instant motion to dismiss and 7 for summary judgment, that the analysis of the claims against the unserved defendants differs 8 in any respect from the analysis of the claims against the other AG defendants.  Given the 9 Court's findings, with respect to the claims against the served defendants, specifically, that 10 (1) plaintiff has failed to exhaust his administrative remedies as to his food deprivation and 11 MCS placement claims and (2) plaintiff has failed to produce evidence showing prison 12 officials violated his constitutional rights by tampering with his mail, plaintiff cannot prevail 13 on those same claims as against the unserved defendants.  Accordingly, the Court will enter 14 judgment in favor of all unserved defendants as well.  See Abagninin v. AMVAC Chemical 15 Corp., 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for 16 judgment on pleadings as to unserved defendants where such defendants were in position 17 similar to served defendants against whom claim for relief could not be stated); Columbia 18 Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803 (9th Cir. 1995) (affirming 19 grant of summary judgment in favor of nonappearing defendant where plaintiff, in response 20 to summary judgment motion filed by defendant who had appeared, had "full and fair 21 opportunity to brief and present evidence" on dispositive issue as to claim against 22 nonappearing defendant).

23  //
24  //

**CONCLUSION**

For the reasons stated, defendants' motion to dismiss and for summary judgment is hereby GRANTED. (Docket No. 105.)

In light of the Court's separate order granting summary judgment in favor of defendant John Chen, the Clerk is hereby directed to ENTER JUDGMENT in favor of all defendants to the instant action.

This order terminates Docket No. 105.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: March 27, 2009

_____
MAXINE M. CHESNEY
United States District Judge